1  **DAVID M.C. PETERSON**
   California State Bar No. 254498
2  FEDERAL DEFENDERS OF SAN DIEGO, INC.
   225 Broadway, Suite 900
3  San Diego, California  92101-5008
   Telephone:  (619) 234-8467
4  david_peterson@fd.org

5  Attorneys for Mr. Metzgar

6

7

8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10             **(HONORABLE LARRY A. BURNS)**

11 UNITED STATES OF AMERICA,          )   Case No.:  08cr0372-LAB
                                      )
12             Plaintiff,             )   Date:    March 24, 2008
                                      )   Time:    2:00 p.m.
13 v.                                 )
                                      )
14 GEORGE METZGAR,                    )   **STATEMENT OF FACTS AND POINTS AND**
                                      )   **AUTHORITIES IN SUPPORT OF MOTIONS**
15             Defendant.             )
                                      )
16 ─────────────────────────────────

17                     **I.**

18              **STATEMENT OF FACTS**[1]

19     On February 3, 2008, at approximately 10:42 p.m., Mr. Metzgar arrived at the Calexico East Port

20 of Entry.  Mr. Metzgar was the driver of a 1974 Tioga RV.  At primary inspection, Mr. Metzgar gave a

21 negative customs declaration.  Because the primary inspector believed Mr. Metzgar was nervous, the

22 primary inspector referred Mr. Metzgar and the vehicle to secondary inspection.  At secondary inspection,

23 a canine alerted to the rear seat of the RV.  Inspection of the vehicle revealed nineteen (19) packages under

24 the vehicle's rear seat.  The contents allegedly field tested positive for the presence of marijuana.

25 Mr. Metzgar was arrested and was taken into custody.

26 ─────────────────────────

27     [1] The facts alleged in these motions are subject to elaboration and/or modification at the time these
28 motions are heard.  Mr. Metzgar reserves the right to take a position contrary to the following statement
   of facts at the motions hearing and at trial.  Because he has received only limited discovery, the statement
   of facts is taken from the complaint's statement of facts signed by the Magistrate Court.

1    While in custody, Mr. Metzgar was interrogated.  <u>See</u> Declaration of Defense Counsel, attached as

2    Exhibit A hereto.  For two hours before interrogation, Mr. Metzgar was handcuffed, and his leg was

3    shackled to a bench.  <u>See</u> Declaration of George Metzgar, attached as Exhibit B hereto.  The DVD of the

4    videotaped interrogation has no sound.  <u>See</u> Videotaped Statement of George Metzgar, attached as Exhibit C

5    hereto.  Before Mr. Metzgar was read his rights, both agents interrogated him.  Exs. A, B, C.  Mr. Metzgar

6    directs his responses to both of them at various times. Mr. Metzgar shakes his head "no." Exs. A, C.  Later,

7    he makes gestures with his hands in a manner indicating that he is describing locations or providing

8    directions.  <u>Id.</u>  Only seven minutes after interrogation begins does Mr. Metzgar appear to waive his rights.

9    In addition, Mr. Metzgar did not understand his rights.  Ex. B.  Once he waived his rights he believed that

10   he had waived his right to remain silent subsequent to questioning.  <u>Id.</u>

11   On February 14, 2007, the January 2007 Grand Jury panel issued an indictment charging

12   Mr. Metzgar with violating 21 U.S.C. §§ 952 and 960, importation of marijuana, and 21 U.S.C. § 841(a)(1),

13   possession of marijuana with the intent to distribute.  He pled not guilty to these charges.  These motions

14   follow.

## II.

### <u>THIS COURT SHOULD SUPPRESS ANY STATEMENTS MADE BY MR. METZGAR</u>

**A.    The Court Must Suppress Mr. Metzgar's Alleged Post-Miranda Statements**

Mr. Metzgar did not understand his rights.  <u>See</u> Ex. B.  Therefore, his waiver of those rights is invalid

and the statements must be suppressed.  In addition, the officers began interrogating Mr. Metzgar before

they read him his <u>Miranda</u> rights.  <u>See</u> Exs. A, B, C.  Therefore his <u>Miranda</u> warnings were ineffective

because Mr. Metzgar was not effectively apprised of his rights, and all pre- and post-<u>Miranda</u> statements

must be suppressed.

### 1.    *Miranda* Warnings Must Precede Custodial Interrogation

The prosecution may not use statements, whether exculpatory or inculpatory, stemming from a

custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective

//

//

to secure the privilege against self-incrimination. <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966).[2] Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. <u>Id.</u> <u>See</u> <u>Orozco v. Texas</u>, 394 U.S. 324, 327 (1969).

Once a person is in custody, <u>Miranda</u> warnings must be given prior to any interrogation. <u>See</u> <u>United States v. Estrada-Lucas</u>, 651 F.2d 1261, 1265 (9th Cir. 1980). Those warnings must advise the defendant of each of his or her "critical" rights. <u>United States v. Bland</u>, 908 F.2d 471, 474 (9th Cir. 1990). If a defendant indicates that he wishes to remain silent or requests counsel, the interrogation must cease. <u>Miranda</u>, 384 U.S. at 474. <u>See also</u> <u>Edwards v. Arizona</u>, 451 U.S. 484 (1981).

According to government counsel, Mr. Metzgar was questioned subsequent to arrest and made statements regarding facts in this case. Thus, the government is required to show that the agent(s) properly administered the <u>Miranda</u> warnings.

### 2. The Government Must Demonstrate That Any Alleged Waiver of Mr. Metzgar's Rights Was Voluntary, Knowing, and Intelligent

When interrogation occurs without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant intelligently and voluntarily waived his privilege against self-incrimination and his right to retained or appointed counsel. <u>Miranda</u>, 384 U.S. at 475. It is undisputed that, to be effective, a waiver of the right to remain silent and the right to counsel must be made knowingly, intelligently, and voluntarily. <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218 (1973). The standard of proof for a waiver of these constitutional rights is high. <u>Miranda</u>, 384 U.S. at 475. <u>See</u> <u>United States v. Heldt</u>, 745 F.2d 1275, 1277 (9th Cir. 1984) (the burden on the government is great, the court must indulge every reasonable presumption against waiver of fundamental constitutional rights).

The validity of the waiver depends upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. <u>Edwards v. Arizona</u>, 451 U.S. 477, 472

//

---

[2] In <u>Dickerson v. United States</u>, 530 U.S. 428, 120 S. Ct. 2326 (2000), the Supreme Court held that <u>Miranda</u> rights are no longer merely prophylactic, but are of constitutional dimension. <u>Id</u>. at 2336 ("we conclude that <u>Miranda</u> announced a constitutional rule").

1  (1981); Johnson v. Zerbst, 304 U.S. 458, 464 (1983).  See also United States v. Heldt, 745 F.2d at 1277;

2  United States v. McCrary, 643 F.2d 323, 328-29 (9th Cir. 1981).

3    In Derrick v. Peterson, 924 F.2d 813 (9th Cir. 1990), the Ninth Circuit confirmed that the issue of

4  the validity of a Miranda waiver requires a two prong analysis:  the waiver must be both (1) voluntary, and

5  (2) knowing and intelligent.  Id. at 820.  The voluntariness prong of this analysis "is equivalent to the

6  voluntariness inquiry under the [Fifth] Amendment . . . ."  Id.  See infra pages 10-11.

7    The second prong, however, requiring that the waiver be "knowing and intelligent," mandates an

8  inquiry into whether "the waiver [was] made with a full awareness both of the nature of the right being

9  abandoned and the consequences of the decision to abandon it."  Id. at 820-21 (quoting Colorado v. Spring,

10  479 U.S. 564, 573 (1987)).  This inquiry requires that the court determine whether "the requisite level of

11  comprehension" existed before the purported waiver may be upheld.  Id.  Thus, "[o]nly if the 'totality of the

12  circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of

13  comprehension may a court properly conclude that the Miranda rights have been waived."  Id. (quoting

14  Colorado v. Spring, 479 U.S. at 573) (emphasis in original) (citations omitted)).

15    Under prevailing Ninth Circuit law, the Government bears the burden of demonstrating a Miranda

16  waiver by clear and convincing evidence.  See Schell v. Witek, 218 F.3d 1017 (9th Cir. 2000) (en banc)

17  (constitutional rights may ordinarily be waived only if it can be established by clear and convincing

18  evidence that the waiver is voluntary, knowing, and intelligent) (citations omitted).  Moreover, this Court

19  must "indulge every reasonable presumption against waiver of fundamental constitutional rights."  Id.

20  (citations omitted).  Unless and until the prosecution meets its burden of demonstrating through evidence

21  that adequate Miranda warnings were given and that the defendant knowingly and intelligently waived his

22  rights, no evidence obtained as result of the interrogation can be used against the defendant.  Miranda, 384

23  U.S. at 479.

24    Until the government meets its evidentiary burden of showing that the Miranda warnings were

25  sufficient or that the Miranda rights were knowingly or intelligently waived, the statements obtained from

26  Mr. Metzgar must be suppressed.

27  //

28  //

4                    08cr0372-LAB

3.    **Mr. Metzgar Did Not Understand His Right To Remain Silent After His Waiver, Once Interrogation Had Begun**

Mr. Metzgar did not understand his rights.  <u>See</u> Ex B.  Specifically, he did not understand that he could invoke his right to silence subsequent to having waived his rights, i.e., during interrogation. <u>Id.</u>  The form signed by Mr. Metzgar waiving his <u>Miranda</u> rights does not make it clear that even subsequent to waiving his right to remain silent, i.e., quit answering questions at any time during questioning, he continues to retain that right.  <u>See</u> Statement and Waiver of Rights Form, Exhibit D hereto.   When warnings are provided but are unclear or susceptible to equivocation, a waiver of rights cannot be effective.  <u>United States v. San Juan-Cruz</u>, 314 F.3d 284, 387 (9th Cir. 2002).

Here the warnings were susceptible to equivocation and in fact did confuse Mr. Metzgar.  <u>See</u> Ex. B.  Mr. Metzgar was informed of his right to remain silent, and of his right to discontinue questioning.  However, based upon the plain language of the statement and waiver of rights form, Ex. D,  it is not clear that once he signs it and waives his rights, he retains his right to quit answering questions at any time.

"What Miranda requires is meaningful advice to the unlettered and unlearned in language which [they] can comprehend and on which [they] can knowingly act."  <u>See</u> <u>San Juan-Cruz</u>, 314 F.3d at 387 (internal quotations omitted).  "The warning must be clear and not susceptible to equivocation." <u>Id.</u>  The warnings were unclear and  susceptible to equivocation.  The government has failed to prove by a preponderance of evidence that any waiver was knowing, thus all statements following the invalid waiver must be suppressed.

**B.    The Court Must Suppress All Pre-<u>Miranda</u> Statements**

Discovery provided by the Government indicates that Agents Steele and Conrad began their interrogation at 1:21 a.m.  <u>See</u> U.S. Customs Interview Sheet, Exhibit E hereto.  The Government has provided a DVD of the videotaped interrogation; there is no sound on the videotape.  <u>See</u> Ex. C; <u>see also</u> Ex. A. From the videotape, it appears that Agents Steele and Conrad began interrogating Mr. Metzgar at approximately 1:10 a.m. <u>Id.</u>  Before reading him his rights, Agent Steele interrogated Mr. Metzgar about the RV, the drugs he claimed to have found, and other topics.  <u>See</u> Exs. A, B, C.  In the video, Mr. Metzgar shakes his head to say "no." Exs. A, C.  Later, he makes gestures with his hands in a manner indicating that he is describing a location or providing directions.  <u>Id.</u>  Both non-verbal gestures strongly indicate that they

1    were responsive not to a biographical question, but to interrogation. See Ex. A. In addition, **both** agents

2    appear to be asking questions, as Mr. Metzgar directs his responses to both of them at various times. See

3    Exs. A, B, C. This too suggests that the agents were not merely asking biographical questions. Cf. Rhode

4    Island v. Innis, 446 U.S. 291, 301 (1980) (excepting from Miranda requirements questions "normally

5    attendant to arrest and custody").

**C.    The Government Must Suppress All Post-Invocation Statements**

7        Discovery provided by the government indicates that Agents Steele and Conrad began their

8    interrogation at 1:21 a.m., and that Mr. Metzgar invoked his right to counsel twenty five minutes later, at

9    1:46 a.m. See Ex. E. Thus, the Government alleges that Mr. Metzgar was interviewed for 25 minutes

10    before invoking. However, the DVD shows that questioning exceeded 25 minutes by a significant amount.

11    See Ex. C. The DVD is 39 minutes long, and there is questioning for most of that 39 minutes. See Exs. A,

12    C. Some of the questioning precedes Miranda warnings, perhaps for seven minutes, but given the timing

13    indicated by Agent Steele, that leaves another seven minutes unaccounted for. See Id.

14        Because there is no sound, when particular statements were actually made is impossible to ascertain.

15    Thus the court must suppress all statements unless the government proves they were after Mr. Metzgar

16    received his Miranda warnings and before he invoked his right to counsel.

**D.    Any Miranda Warnings Were Ineffective Because the Agents Engaged in a Deliberate, Two-
          Step Interrogation**

19        Agents questioned Mr. Metzgar both before and after they provided him with the required Miranda

20    warnings. See Exs. A, B, C. The statements preceding warnings must be suppressed under Miranda, as

21    must his statements following mid-stream Miranda warnings, under United States v. Williams, 435 F.3d

22    1148, 1157 (9th Cir. 2006). Even if Mr. Metzgar's pre-Miranda statements were uncoerced and voluntary,

23    any statements that follow the Miranda warnings must be suppressed because the agents exploited the form

24    of Miranda warnings, without effectively apprising Mr. Metzgar of his rights. Id., citing Missouri v. Siebert,

25    542 U.S. 600, 609, 616-17 (2004).

26    //

27    //

28    //

<u>Siebert</u> and <u>Williams</u> require suppression when there is "objective evidence" of deliberateness in a two-step interrogation. <u>Williams</u>, 435 F.3d at 1138.[3] The Ninth Circuit has identified six factors the court must consider when determining whether the government has shown the two-step process was not deliberate:

> (1) the completeness and detail of the prewarning interrogation, (2) the overlapping content of the two rounds of interrogation, (3) the timing and circumstances of both interrogations, (4) the continuity of police personnel, (5) the extent to which the interrogator's questions treated the second round of interrogation as continuous with the first and (6) whether any curative measures were taken.

<u>Williams</u>, 435 F.3d at 1160 (emphasis added).

The <u>Williams</u> factors weigh heavily against the government. The second <u>Williams</u> factor, the overlapping content, weighs against the government. The agents questioned Mr. Metzgar about the same events before and after. The third <u>Williams</u> factor, timing, suggests deliberateness on the part of the officers. The agents engaged in questioning, followed interrogation immediately by <u>Miranda</u> warnings, and then they followed with more interrogation. <u>Id.</u> at 1160. In addition, the fourth factor clearly indicates deliberateness on the part of the officers. Agents Steele and Conrad conducted both the pre- and post-<u>Miranda</u> interrogation, suggesting deliberateness. <u>Id.</u> Finally, the fifth <u>Williams</u> factor mandates suppression. Although the sound is not available, the timing suggests that the agents treated the second round of interrogation as continuous with the first. <u>Id.</u> <u>Miranda</u> warnings alone following the pre-<u>Miranda</u> statement are insufficient to cure the <u>Siebert</u> violation, because Mr. Metzgar was not told that any statements of his prior to the <u>Miranda</u> warnings would be inadmissible at trial.

//

---

[3] Justice Kennedy wrote that:

> the two-step technique permits the accused to conclude that the right not to respond did not exist when the earlier incriminating statements were made. The strategy is based on the assumption that Miranda warnings will tend to mean less when recited midinterrogation, after inculpatory statements have already been obtained. This tactic relies on an intentional misrepresentation of the protection that Miranda offers and does not serve any legitimate objectives that might otherwise justify its use.

<u>Siebert</u>, 542 U.S. at 620-21. (Kennedy, J., concurring in the judgment).

1  Because there is no sound on the DVD, other "objective evidence" bearing on the <u>Williams</u> factors

2  can only be ascertained through a hearing. At this time the government has provided no evidence in meeting

3  its burden to prove that the statements followed effective <u>Miranda</u> warnings. The government has not

4  shown that the content and thoroughness of the prewarning interrogation was insignificant; they have not

5  shown the content of either round of interrogation, or whether they overlapped; and they have not

6  demonstrated that any curative measures were taken following the prewarning interrogation in violation of

7  <u>Miranda</u>.

8  As the burden is on the government to prove by clear and convincing evidence that <u>Miranda</u>

9  warnings were effective, all statements must be suppressed. <u>See</u> <u>Schell</u>, 218 F.3d at 1017. In the alternative

10  a hearing on the pre-<u>Miranda</u> statements, the deliberateness of the two-step process, and the effectiveness

11  of the <u>Miranda</u> warnings.

12  **E.    Any Statements by Mr. Metzgar Were Involuntary**

13  Even when the procedural safeguards of <u>Miranda</u> have been satisfied, which the government has not

14  proved here, a defendant in a criminal case is deprived of due process of law if the conviction is founded

15  upon an involuntary confession. <u>Arizona v. Fulminante</u>, 499 U.S. 279 (1991); <u>Jackson v. Denno</u>, 378 U.S.

16  368, 387 (1964). The government bears the burden of proving by "at least" preponderance of the evidence

17  that a confession is voluntary. <u>Seibert</u>, 542 U.S. at 608, n.1, <u>citing</u> <u>Lego v. Twomey</u>, 404 U.S. 477, 483

18  (1972).

19  In order to be voluntary, a statement must be the product of a rational intellect and free will.

20  <u>Blackburn v. Alabama</u>, 361 U.S. 199, 208 (1960). In determining whether a defendant's will was overborne

21  in a particular case, the totality of the circumstances must be considered. <u>Schneckloth v. Bustamonte</u>, 412

22  U.S. 218, 226 (1973). Some factors taken into account have included the youth of the accused, his lack of

23  education, his low intelligence, the lack of any advice to the accused of his constitutional rights, the length

24  of the detention, the repeated and prolonged nature of the questioning, and the use of physical punishment

25  such as the deprivation of food or sleep. <u>Id.</u> The fact that the statement occurred subsequent to the six-hour

26  safe harbor period also is of consequence. <u>See</u> 18 U.S.C. § 3501.

27  A confession is deemed involuntary whether coerced by physical intimidation or psychological

28  pressure. <u>Townsend v. Sain</u>, 372 U.S. 293, 307 (1962). "The test is whether the confession was `extracted

1  by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by

2  the exertion of any improper influence.'" Hutto v. Ross, 429 U.S. 28, 30 (1976) (quoting Bram v. United

3  States, 168 U.S. 532, 542-43 (1897)). Accord, United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981).

4          A number of factors indicate that Mr. Metzgar's statements were not voluntary. See Exs. A, B.  Mr.

5  Metzgar did not understand his rights.  See Ex. B.  In the time that passed between Mr. Metzgar's arrest and

6  his interrogation he was handcuffed, and his leg was shackled to a bench.  Ex. B.  He was questioned before

7  receiving Miranda warnings.  Exs. A, B, C.  At all times in the videotaped interrogation, Mr. Metzgar was

8  without the assistance of counsel.  Ex. A.  Until the government meets its burden of showing all statements

9  of the defendant that it intends to use at trial were voluntary, all statements must be suppressed as

10 involuntary.

11 **F.      Mr. Metzgar Requests That This Court Conduct An Evidentiary Hearing.**

12         This Court must make a factual determination as to whether a confession or statements were

13 voluntarily given prior to their admission into evidence.    18 U.S.C. § 3501(a).    Where a factual

14 determination is required, courts are obligated by Fed. R. Crim. P. 12 to make factual findings.  See

15 United States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990).  Because "'suppression hearings are

16 often as important as the trial itself,'" id. at 609-10 (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)),

17 these findings should be supported by evidence, not merely an unsubstantiated recitation of purported

18 evidence in a prosecutor's responsive pleading.

19         Under section 3501(b), this Court must consider various enumerated factors in making the

20 voluntariness determination, including whether the defendant understood the nature of the charges against

21 her and whether she understood her rights.  Without the presentation of evidence, this Court cannot

22 adequately consider these statutorily mandated factors. Mr. Metzgar accordingly requests that this Court

23 conduct an evidentiary hearing pursuant to 18 U.S.C. § 3501(a), to determine, outside the presence of the

24 jury, whether any statements made by the defendant were voluntary.

25 //

26 //

27 //

28 //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.

### **MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS**

Defense counsel requests leave to file further motions and notices of defense based upon information gained in the discovery process. To date, counsel has received 81 pages of discovery from the government in this matter.

### IV.

### **CONCLUSION**

For these and all the foregoing reasons, the defendant, Mr. Metzgar, respectfully requests that this Court grant his motions and grant any and all other relief deemed proper and fair.

Respectfully submitted,

DATED: March 6, 2008

_/s/ David M.C. Peterson_____
DAVID M.C. PETERSON
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Metzgar
E-mail: david_peterson@fd.org

1

<u>INDEX OF EXHIBITS</u>

2     Exhibit A     Declaration of David Peterson, Counsel for George Metzgar

3     Exhibit B     Declaration of George Metzgar

4     Exhibit C     Videotaped statement of George Metzgar

5     Exhibit D     Statement and Waiver of Rights Form

6     Exhibit E     U.S. Customs Interview Sheet

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        08cr0372-LAB

**<u>CERTIFICATE OF SERVICE</u>**

Counsel for Defendant certifies that the foregoing is true and accurate to the best information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

Courtesy Copy to Chambers

Copy to Assistant U.S. Attorney via ECF NEF

Copy to Defendant

Dated:  March 6, 2008                    /s/ DAVID M. PETERSON
                                         Federal Defenders of San Diego, Inc.
                                         225 Broadway, Suite 900
                                         San Diego, CA  92101-5030
                                         (619) 234-8467  (tel)
                                         (619) 687-2666  (fax)
                                         David_Peterson@fd.org (email)