| | |
|---|---|
| 1 | KAREN P. HEWITT |
| | United States Attorney |
| 2 | CARLOS ARGUELLO |
| | Assistant U.S. Attorney |
| 3 | California State Bar No. 157162 |
| | Federal Office Building |
| 4 | 880 Front Street, Room 6293 |
| | San Diego, California  92101-8800 |
| 5 | Telephone: (619) 557-6252 |
| | Facsimile: (619) 235-2757 |
| 6 | |
| 7 | Attorneys for Plaintiff |
| | United States of America |

                     UNITED STATES DISTRICT COURT

                    SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08cr0372LAB |
|---|---|---|
| | ) | |
|             Plaintiff, | ) | DATE: March 24, 2008 |
| | ) | TIME: 2:00 p.m. |
|     v. | ) | |
| | ) | GOVERNMENT'S RESPONSE AND |
| | ) | OPPOSITION TO DEFENDANT'S |
| | ) | MOTIONS TO: |
| GEORGE METZGAR, | ) | |
| | ) | 1) SUPPRESS STATEMENTS, AND |
|             Defendant. | ) | 2) FILE FURTHER MOTIONS. |
| | ) | |

   COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Carlos Arguello, Assistant United States Attorney, and hereby files its response and opposition to Defendant's above-referenced motions.  This response is based upon the files and records of this case, together with the attached statement of facts, memorandum of points and authorities and the Government's motion for reciprocal discovery.

///

///

**I.**

**STATEMENT OF FACTS**

**A.  PRIMARY INSPECTION**

On Sunday, February 3, 2008, at approximately 10:40 p.m., Defendant George Metzgar ("Defendant") drove a 1974 Dodge Tioga motor home, with Nevada license plates, to the Calexico, California, East Port of Entry. He was the vehicle's sole occupant and registered owner.

United States Customs and Border Protection Officer Molina was working at primary booth number one at the port when Defendant's vehicle approached. The Officer asked Defendant routine border inspection questions.

Defendant declared to be a United States citizen and provided his California identification card (which showed his birth date as August 22, 1946). Defendant claimed he was not bringing anything back from Mexico. Defendant also told the Officer that he was on his way to visit family in Indio. With some hesitation, he further explained he had been vacationing in Mexicali the past three days as he recently had retired. Finally, Defendant stated he lived in Phoenix, Arizona.

During this brief interaction with Defendant, Officer Molina noticed Defendant's demeanor: he seemed noticeably anxious to provide his vehicle registration to the Officer; he interfered with the Officer's inspection; and he seemed nervous as his hands shook when he presented his registration document.

As a result, the Officer referred Defendant and his motor home to the secondary area for further inspection.
///

**B.    SECONDARY INSPECTION**

In the secondary inspection area, United States Customs and Border Protection Officer Bosquet assumed inspection of the 1974 Dodge Tioga motor home. The Officer initiated his inspection by speaking with Defendant. In response to questioning, Defendant claimed he had owned the vehicle for one week (although registration documents in the motor home were issued to Defendant in March 2007), and that he had just been to San Felipe, Mexico. Defendant stated he had been in San Felipe for the past three days. He further told the Officer he had just retired and he had gone to Mexico just because he felt like it.

The Officer then inspected the motor home. Officer Bosquet learned from Canine Enforcement Officer Ragsdale that a narcotics detector dog had alerted to the rear of the motor home. Officer Bosquet conducted a "seven-point" inspection of the vehicle and ultimately found a total of nineteen (19) packages of what proved to be marijuana, hidden in a non-factory plywood compartment underneath the rear sofa cushions. The gross weight of the marijuana was 104.54 kilograms or 229.98 pounds.

Officers subsequently placed Defendant under arrest for the illegal importation of narcotics.

During a search of Defendant's person incident to arrest, agents found a total of $40.00 cash.

**C.    DEFENDANT'S STATEMENTS**

United States Immigration and Customs Enforcement Special Agent William Steele assumed the investigation of this case. At approximately 1:20 a.m., Agent Steele advised Defendant of his Miranda rights in the English language with fellow Special Agent

1 | Jerry Conrad acting as a witness.  Defendant stated he understood
2 | his rights and agreed to speak with the agents.
3 |     Defendant denied knowledge of the marijuana found in his
4 | motor home.  He claimed he drove to Mexico since he had not been
5 | there in some time.  Once in Mexicali on Friday, he noticed his
6 | radiator over heated so he stopped at a repair shop in that city.
7 | Defendant was unable to provide agents any information related to
8 | the repair shop such as its name, location, or anything else that
9 | might be relevant.
10 |     Defendant stated that persons at the repair shop gave him a
11 | ride to the Azteca hotel in Mexicali where Defendant stayed from
12 | Friday until Sunday, the day the shop completed the repairs and
13 | the day of his arrest.  Defendant told the agents that persons at
14 | the radiator repair shop must have placed the drugs in his motor
15 | home.
16 |     Agent Lewenthal questioned the veracity of Defendant's story
17 | and told Defendant that drug smugglers simply are not known to
18 | give marijuana-loaded vehicles to unknowing drivers.  Defendant
19 | then added to his story be telling agents that persons at the
20 | radiator shop had tried to hire him as a load driver but, when he
21 | declined, they then offered to buy the motor home from him.
22 | Defendant then invoked his right to counsel.
23 | **D.**  **THE INDICTMENT**
24 |     On February 13, 2008, a grand jury returned an indictment
25 | against Defendant charging him with one count of importing
26 | marijuana into the United States in violation of Title 21, United
27 | States Code, Sections 952 and 960, and one count of possessing
28 |

4

marijuana with intent to distribute in violation of Title 21, United States Code, Section 841(a)(1).

## II.

## POINTS AND AUTHORITIES

**A.  DEFENDANT'S STATEMENTS ARE ADMISSIBLE**

   **1.  Defendant's Waiver Of Rights Was Knowing, Voluntary, And Intelligent**

Defendant's statements were voluntary and made after he was advised of his Miranda rights and waived them. Before the interview began, Defendant was read his Miranda rights in English from an advice of rights form. After stating that he understood his rights, Defendant waived his rights and agreed to be interviewed without an attorney present.

It is uncontested that custodial interrogation designed to elicit incriminating statements must be preceded by explicit procedural safeguards. Miranda v. Arizona, 384 U.S. 436 (1966). Whether there has been an intelligent Miranda waiver by Defendant depends upon the particular facts in the case, including the background, experience, and conduct of the accused. Brewer v. Williams, 430 U.S. 387, 403 (1977); United States v. Rodriguez-Gastelum, 569 F.2d 482, 483 (9th Cir.) cert. denied, 436 U.S. 919 (1978).

Statements taken in violation of the Miranda safeguards are ordinarily inadmissible. See United States v. Heldt, 745 F.2d 1275 (9th Cir. 1984). The burden is on the Government to establish voluntariness by a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 488-489 (1972).

1   While it is true that this burden rests on the Government, the Court must still consider what effect the actions of the Government agents had upon a defendant. The focus of the inquiry is on the defendant's state of mind. See Title 18, United States Code, Section 3501(b). Therefore, the Court should consider defendant's testimony, or his failure to give it, before deciding this issue.

A statement is considered voluntary if the totality of the surrounding circumstances indicates that it was the product of free and rational choice. Culombe v. Connecticut, 367 U.S. 568, 602 (1961). The voluntariness of a Fifth Amendment waiver depends "on the absence of police overreaching, not on 'free choice' in any broader sense of the word." Colorado v. Connelly, 479 U.S. 157, 170 (1986). In examining the totality of the circumstances, the Court must examine the personal characteristics of defendant together with the details of the interrogation. See Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). Relevant personal characteristics of defendant include his age, intelligence, educational level, knowledge of rights, as well as his physical, mental, or emotional condition. See Brewer v. Williams, 430 U.S. 387, 403 (1977).

The testimony would establish that Defendant was not subjected to outrageous conduct such as physical intimidation, torture, coercion, or threats. Rather, Defendant had his Miranda rights properly read to him. Thereafter, Defendant acknowledged and waived his rights.

The Government's conduct was entirely proper and this Court should not suppress any statements made by Defendant.

**B.  FILE FURTHER MOTIONS**

The Government does not oppose Defendant's request to file further motions if based on newly acquired discovery.

### III

**A.  GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY**

The Government hereby requests Defendant to deliver all materials to which the Government may be entitled under Federal Rules of Criminal Procedure 16(b) and 26.2.

### IV.

### CONCLUSION

For the foregoing reasons, the Government respectfully requests that Defendant's motions be denied where opposed.

DATED:  March 12, 2008.

                              Respectfully submitted,

                              KAREN P. HEWITT
                              United States Attorney

                              s/ Carlos Arguello

                              CARLOS ARGUELLO
                              Assistant U.S. Attorney
                              Attorneys for Plaintiff
                              United States of America
                              Email: Carlos.Arguello2@usdoj.gov