| | |
|---|---|
| 1 | KAREN P. HEWITT<br>United States Attorney |
| 2 | CARLOS ARGUELLO<br>Assistant U.S. Attorney |
| 3 | California State Bar No. 157162<br>Federal Office Building |
| 4 | 880 Front Street, Room 6293<br>San Diego, California  92101-8800 |
| 5 | Telephone: (619) 557-6252<br>Facsimile: (619) 235-2757 |

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08cr0372LAB |
|---|---|---|
| | ) | |
| Plaintiff, | ) | DATE: March 24, 2008 |
| | ) | TIME: 2:00 p.m. |
| v. | ) | |
| | ) | GOVERNMENT'S RESPONSE AND |
| | ) | OPPOSITION TO DEFENDANT'S |
| | ) | MOTIONS TO: |
| GEORGE METZGAR, | ) | |
| | ) | 1) DISMISS INDICTMENT; AND |
| Defendant. | ) | 2) COMPEL DISCOVERY. |
| | ) | |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Carlos Arguello, Assistant United States Attorney, and hereby files its response and opposition to Defendant's above-referenced motions.  This response is based upon the files and records of this case, together with the attached statement of facts, memorandum of points and authorities and the Government's motion for reciprocal discovery.

///

///

**I.**

**STATEMENT OF FACTS**

**A.   PRIMARY INSPECTION**

On Sunday, February 3, 2008, at approximately 10:40 p.m., Defendant George Metzgar ("Defendant") drove a 1974 Dodge Tioga motor home, with Nevada license plates, to the Calexico, California, East Port of Entry. He was the vehicle's sole occupant and registered owner.

United States Customs and Border Protection Officer Molina was working at primary booth number one at the port when Defendant's vehicle approached. The Officer asked Defendant routine border inspection questions.

Defendant declared to be a United States citizen and provided his California identification card (which showed his birth date as August 22, 1946). Defendant claimed he was not bringing anything back from Mexico. Defendant also told the Officer that he was on his way to visit family in Indio. With some hesitation, he further explained he had been vacationing in Mexicali the past three days as he recently had retired. Finally, Defendant stated he lived in Phoenix, Arizona.

During this brief interaction with Defendant, Officer Molina noticed Defendant's demeanor: he seemed noticeably anxious to provide his vehicle registration to the Officer; he interfered with the Officer's inspection; and he seemed nervous as his hands shook when he presented his registration document.

As a result, the Officer referred Defendant and his motor home to the secondary area for further inspection.

///

**B.    SECONDARY INSPECTION**

In the secondary inspection area, United States Customs and Border Protection Officer Bosquet assumed inspection of the 1974 Dodge Tioga motor home. The Officer initiated his inspection by speaking with Defendant. In response to questioning, Defendant claimed he had owned the vehicle for one week (although registration documents in the motor home were issued to Defendant in March 2007), and that he had just been to San Felipe, Mexico. Defendant stated he had been in San Felipe for the past three days. He further told the Officer he had just retired and he had gone to Mexico just because he felt like it.

The Officer then inspected the motor home. Officer Bosquet learned from Canine Enforcement Officer Ragsdale that a narcotics detector dog had alerted to the rear of the motor home. Officer Bosquet conducted a "seven-point" inspection of the vehicle and ultimately found a total of nineteen (19) packages of what proved to be marijuana, hidden in a non-factory plywood compartment underneath the rear sofa cushions. The gross weight of the marijuana was 104.54 kilograms or 229.98 pounds.

Officers subsequently placed Defendant under arrest for the illegal importation of narcotics.

During a search of Defendant's person incident to arrest, agents found a total of $40.00 cash.

**C.    DEFENDANT'S STATEMENTS**

United States Immigration and Customs Enforcement Special Agent William Steele assumed the investigation of this case. At approximately 1:20 a.m., Agent Steele advised Defendant of his Miranda rights in the English language with fellow Special Agent

Jerry Conrad acting as a witness. Defendant stated he understood his rights and agreed to speak with the agents.

Defendant denied knowledge of the marijuana found in his motor home. He claimed he drove to Mexico since he had not been there in some time. Once in Mexicali on Friday, he noticed his radiator over heated so he stopped at a repair shop in that city. Defendant was unable to provide agents any information related to the repair shop such as its name, location, or anything else that might be relevant.

Defendant stated that persons at the repair shop gave him a ride to the Azteca hotel in Mexicali where Defendant stayed from Friday until Sunday, the day the shop completed the repairs and the day of his arrest. Defendant told the agents that persons at the radiator repair shop must have placed the drugs in his motor home.

Agent Lewenthal questioned the veracity of Defendant's story and told Defendant that drug smugglers simply are not known to give marijuana-loaded vehicles to unknowing drivers. Defendant then added to his story be telling agents that persons at the radiator shop had tried to hire him as a load driver but, when he declined, they then offered to buy the motor home from him. Defendant then invoked his right to counsel.

D.  **THE INDICTMENT**

On February 13, 2008, a grand jury returned an indictment against Defendant charging him with one count of importing marijuana into the United States in violation of Title 21, United States Code, Sections 952 and 960, and one count of possessing

4

marijuana with intent to distribute in violation of Title 21, United States Code, Section 841(a)(1).

## II.

## POINTS AND AUTHORITIES

**A.    THE CONSTITUTIONALITY OF THE DRUG STATUTES**

Under United States v. Buckland, 277 F.3d 1173, 1177 (9th Cir. 2002) (en banc), the drug importation statutes, 21 U.S.C. §§ 952 and 960, are constitutional on their face, and are consistent with the Supreme Court's ruling in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). The Ninth Circuit has held that Buckland precludes the precise claim that Defendant makes regarding the constitutionality of sections 952 and 960. United States v. Mendoza-Paz, 286 F.3d 1104 (9th Cir. 2002); see also United States v. Varela-Rivera, 279 F.3d 1174, 1175 n.1 (9th Cir. 2002).

Moreover, Buckland did not affect the well-settled rule that the defendant need only know that he is importing a controlled substance; he need not know the particular drug type or quantity. Thus, drug type and amount are not elements of the offense, and Defendant's motion to dismiss should be denied. United States v. Carranza, 289 F.3d 634, 644 (9th Cir. 2002)(holding that Government need not prove the defendant knew type or amount of a controlled substance under Apprendi).

**B.    COMPEL DISCOVERY**

The Government has produced approximately eighty-one (81) pages of discovery. Additional discovery will be produced as it is available. At this time, the Government is awaiting a

1 laboratory analysis report from the Drug Enforcement
2 Administration, Department of Motor Vehicle documents, photographs
3 taken on the day of arrest, cellular phone records, and further
4 Immigration and Customs Enforcement reports which will be provided
5 to Defendant once they have been received.

6 The discovery produced is in excess of that required by Rule
7 16 of the Federal Rules of Criminal Procedure and the Jencks Act
8 (now covered by Rule 26.2 of the Federal Rules of Criminal
9 Procedure). As to the physical evidence, the Government will make
10 it available for viewing by defense counsel at a mutually
11 convenient time and place.

12 As to exculpatory information, the Government is well aware
13 of its obligation under Brady v. Maryland, 373 U.S. 83 (1963) and
14 will comply.

15 The Government will provide a list of witnesses in its trial
16 memorandum. The grand jury transcript of any person who will
17 testify at trial will also be produced.

18 The Government has provided and will continue to provide
19 information within its possession or control pertaining to the
20 prior criminal history of the Defendant. Evidence of other acts
21 or crimes by the Defendant similar to this marijuana smuggling
22 case will be provided. The Government intends to seek permission
23 to introduce this evidence under Fed. R. Evid. 404(b) at trial and
24 hereby formally provides written notice to Defendant. The
25 Government also intends to seek permission to impeach Defendant
26 with any felony conviction he may have under Fed. R. Evid.
27 609(a)(1) if he testifies at trial.
28

1 | The Government will produce the reports of any experts that it intends to use in its case-in-chief at trial or are material to the preparation of the defense.

In view of the above-stated position of the Government concerning discovery, it is respectfully requested that no orders compelling specific discovery by the Government be made at this time. The Government also respectfully requests reciprocal discovery of the Defendant. If and when individual problems arise which cannot be resolved between counsel for Defendant and the Government, the matters can be submitted to the Court for decision.

## III.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that Defendant's motions be denied where opposed.

DATED: March 21, 2008.

```
                              Respectfully submitted,

                              KAREN P. HEWITT
                              United States Attorney


                              s/ Carlos Arguello

                              CARLOS ARGUELLO
                              Assistant U.S. Attorney
                              Attorneys for Plaintiff
                              United States of America
                              Email: Carlos.Arguello2@usdoj.gov
```