1  **DAVID M.C. PETERSON**
   California State Bar Number 254498
2  **JASON I. SER**
   California State Bar Number 201816
3  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
4  San Diego, California  92101-5008
   Tel:  (619) 234-8467 / Fax: (619) 687-2666
5  david_peterson@fd.org
   jason_ser@fd.org
6
   Attorneys for Mr. Metzgar
7

8                    UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10                        **(HONORABLE LARRY A. BURNS)**

11  UNITED STATES OF AMERICA,        )    Case No. 08CR0372-LAB
                                     )
12              Plaintiff,           )
                                     )    MEMORANDUM OF POINTS AND
13  v.                               )    AUTHORITIES IN SUPPORT OF
                                     )    MR. METZGAR'S *IN LIMINE* MOTIONS
14  GEORGE METZGAR                   )
                                     )
15              Defendant.           )
                                     )
16

17                                    **I.**

18                                **INTRODUCTION**

19      Mr. George Metzgar is charged by indictment with violating 21 U.S.C. §§ 952 and 960, Importation

20 of Marijuana, and 21 U.S.C. §841(a)(1), possession with intent to distribute.  Relevant background facts for

21 his pre-trial motions were set out in a prior pleading and are incorporated by reference herein.

22                                   **II.**

23      **EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS SHOULD BE PRECLUDED**

24      The Federal Rules of Evidence require the government to give the defense notice of its intent to use

25 404(b) evidence of other crimes, wrongs, or acts by Mr. Metzgar.  Mr. Metzgar has not received notice of

26 any such evidence, thus it should be excluded.

27 //

28 //

1

2   Additionally, Federal Rule of Evidence 609 allows prior convictions to be introduced for the purpose
3   of attacking the credibility of a witness. This rule allows the admission of evidence that an accused has been
4   convicted of a crime, punishable by death or imprisonment in excess of one year under the law, if it is more
5   probative than prejudicial. Evidence that any witness has been convicted of a crime may also be admitted,
6   if it involved dishonesty or false statement, regardless of the punishment. Mr. Metzgar has not been notified
7   of any impeachment evidence pursuant to Rule 609 or Rule 608. Therefore, introduction of any
8   impeachment evidence under Rule 609 or Rule 608 would be unduly prejudicial and should thus be barred.

9   **III.**

10  **MR. METZGAR'S COUNSEL SHOULD HAVE THE OPPORTUNITY
    TO VOIR DIRE THE JURY**

11

12  Pursuant to Fed. R. Crim. P. 24(a), to provide effective assistance of counsel and to exercise Mr. 's
13  right to trial by an impartial jury, defense counsel requests the opportunity to personally voir dire the
14  prospective members of the jury.

15  **IV.**

16  **THIS COURT SHOULD EXCLUDE ANY EXPERT TESTIMONY DESCRIBING THE
    STRUCTURE OF SUPPOSED DRUG SMUGGLING ORGANIZATIONS, AS IT IS
17  IRRELEVANT, IMPROPER UNDER FRE 702 AND 703, AND UNDULY PREJUDICIAL UNDER
    FRE 403**

18

19  Under this Circuit's precedent United States v. Vallejo, 237 F.3d 1008 (9th Cir. 2001), and United
20  States v. McGowan, 274 F.3d 1251 (9th Cir. 2001), structure testimony may not be permitted in this trial.
21  This sort of "expert" testimony not only fails the balancing test set forth by FRE 403, but also is literally
22  irrelevant and an abuse of discretion under FRE 401. Vallejo, 237 F.3d at 1017. The same problem exists
23  with any organizational structure evidence in this case. The government has not charged Mr. Metzgar with
24  conspiracy. No evidence whatsoever suggests that a vast drug trafficking network played any role in the
25  instant offense. Any attempt to connect Mr. Metzgar to a vast drug empire that has not been alleged and has
26  not been proven violates FRE 401, 403, and Ninth Circuit case law. A motion *in limine* excluding such
27  evidence should be granted accordingly.

28  //

**V.**

**THE PRESENCE OF MARIJUANA IN THE COURTROOM IS HIGHLY PREJUDICIAL, MINIMALLY PROBATIVE AT BEST, AND THUS PROPERLY PRECLUDED UNDER FRE 403.**

At trial, the government may insist on presenting the actual bags of marijuana seized to the jury. In this particular case, in which Mr. Metzgar's knowledge of the drugs is the only contested issue, this evidence is highly inflammatory yet has virtually no probative value as to any fact in dispute. It must be excluded under FRE 403.

FRE 403 asserts that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Presentation of the marijuana seized in this case to the jury runs afoul of this evidentiary rule.

It is feared that the government may attempt to inflame the passions of the jury through gratuitous display of the marijuana seized in this case. In the past, some Assistant United States' Attorneys have taken every opportunity to handle bags of marijuana, passing them before the jury, and moving them about the courtroom. A few have gone so far as to wear blue chemical resistant gloves when handling narcotic substances, further attempting to poison the jury through dramatics. This physical evidence has no place at this trial. Because the presence of marijuana seized is undisputed in this case, there is simply no reason to bring this physical evidence into the courtroom. This lack of probative value, however, stands in contrast to the highly prejudicial nature of this contraband. Many jurors will no doubt be scandalized by the nature of the drugs involved in this case. In sum, this evidence proves no issue that is in dispute, yet threatens to badly prejudice Mr. Metzgar. For these reasons, Mr. Metzgar respectfully requests that this evidence be excluded from trial.

**VI.**

**THE COURT SHOULD PRECLUDE ADMISSION OF DOCUMENTS NOT YET PRODUCED IN DISCOVERY, AND SHOULD REQUIRE THE GOVERNMENT TO COMPLY WITH THE NOTICE REQUIREMENTS OF RULE 12(b)(4)(B).**

Mr. Metzgar has made a number of discovery requests in this case, including for production of relevant documents. See Fed. R. Crim. P. 16(a)(1)(E). He now moves that the Court prohibit introduction at trial of any documents not yet produced in discovery. Section (d)(2) of Rule 16 allows this Court to impose

sanctions when a party fails to comply with Rule 16. Specifically, under Rule 16(d)(2)(C), this Court can "prohibit that party from introducing the undisclosed evidence." Furthermore, pursuant to Federal Rule of Criminal procedure 12(b)(4)(B), Mr. Metzgar requests that the Court order the government to provide him with prompt notice of its intention to use any discoverable evidence in its case-in-chief.

## VII.

### THIS COURT SHOULD ORDER PRODUCTION OF SUPPLEMENTAL REPORTS.

Pursuant to Rule 16 of the Federal Rules of Criminal Procedure and upon request of the defense, the government has a duty to turn over any reports in its possession that are material to the preparation of the defendant's defense. The defense requested such reports in its motion for discovery. Mr. Metzgar requests disclosure of any "supplemental reports" generated in this case. It has come to Mr. Metzgar's attention that the government's recent practice is to not disclose "supplemental reports." These reports generally memorialize later investigation of the case and can include information that confirms a defendant's statements made at the border. Mr. Metzgar believes that any such report is discoverable under Brady and Rule 16. Additionally, pre-trial disclosure will avoid unnecessary delay at trial should the reports become producible under Jencks. See, e.g, Fed. R. Crim. P. 26.2(d). If the government contends that any "supplemental report" generated in this case is not discoverable, Mr. Metzgar requests that the Court view this report *in camera.*

## VIII.

### THIS COURT SHOULD EXCLUDE POVERTY EVIDENCE.

It is impermissible for the prosecution to elicit testimony or to comment in any fashion upon the difficult financial circumstances of the defendant. Such comments regarding poverty are forbidden. United States v. Romero-Avila, 210 F.3d 1017, 1022 n.2 (9th Cir. 2000). Specifically, Mr. Metzgar seeks to exclude references to the amount of money found on his person at the time of his arrest.

Even before the Romero-Avila case, this Circuit had concluded as much. In United States v. Mitchell, 172 F.3d 1104 (9th Cir. 1999), the defendant was convicted of bank robbery and, at trial, the prosecution offered evidence that the defendant was poor to prove the defendant's motive to commit the bank robbery. In reversing the conviction, the court stated that:

> Poverty as proof of motive has in many cases little tendency to make theft more probable. Lack of money gives a person an interest in having more. But so does desire for money, without poverty. A rich man's greed is as much a

1    motive to steal as a poor man's poverty.  Proof of either, without more, is likely
2    to amount to a great deal of unfair prejudice with little probative value.

3 Id. at 1108-09.  To be admissible, the court stated that the poverty evidence must be accompanied by
4 something more, such as an "unexplained, abrupt change in circumstances." Id. at 1108-09.  Ninth Circuit
5 precedent suggests that poverty evidence is only admissible if accompanied by evidence of a specific and
6 immediate financial need.  See United States v. Jackson, 882 F.2d 1444, 1453 (9th Cir. 1989) (Reinhardt, J.,
7 dissenting); see also id. at 1450 (majority opinion) (noting that "poverty alone does not indicate a motive to
8 commit, or the commission of, a crime"); see also United States v. Bensimon, 172 F.3d 1121, 1129 (9th Cir.
9 1999) (fact that defendant in bankruptcy at time crime committed does not demonstrate particular need for
10 money); Mitchell, 172 F.3d 1104, 1108-09 (9th Cir. 1999) (evidence of poverty, absent "an unexplained
11 abrupt change of circumstances," is inadmissible to prove motive); United States v. Grissom, 645 F.2d 461,
12 469 n.11 (5th Cir. 1981) ("[I]t is almost always grossly improper for any lawyer representing the United States
13 government to comment on the **indigency** of a defendant") (emphasis added).

14    "Poverty comments" may not be made even when the evidence commented upon is admitted by the
15 defense.  Romero-Avila, 210 F.3d 1017, 1022 and n.2 (9th Cir. 2000).  Romero-Avila specifically rejected
16 the very argument that the defendant is barred from challenging comments upon improper poverty testimony
17 because he elicited it during cross-examination, and held that the government's comments were plain error.
18 As such, regardless of any evidence proffered by the defendant as to his financial circumstances, any reference
19 to the defendant's financial situation must be excluded.

**IX.**

**THIS COURT SHOULD EXCLUDE EVIDENCE OF MR. METZGAR'S DEMEANOR AND THE "IMPRESSIONS" OF THE GOVERNMENT WITNESSES.**

23    Government witnesses may opine that Mr. Metzgar was nervous when he interacted with agents after
24 he was stopped or otherwise comment on his alleged demeanor.  The defense files this motion to prevent the
25 government's introducing this or any other demeanor evidence at trial.
26 //
27 //
28 //

**A.     Such Evidence Should Be Precluded Under Federal Rule of Evidence 403 Because Testimony That Someone Was "Nervous" Is Irrelevant and Overly Prejudicial.**

Rule 403 allows the Court to exclude relevant evidence if the "[p]robative value is substantially outweighed by danger of unfair prejudice." Lay witness testimony regarding nervousness, absent some prior knowledge of the defendant, has minimal, if any, relevance. United States v. Wald, 216 F.3d 1222, 1227 (10th Cir. 2000) (en banc) (evidence of nervousness "is of limited significance"[,] "particularly when [the agent] had no prior acquaintance with the [defendant]."); United States v. Fernandez, 18 F.3d 874, 879 (10th Cir. 1994) ("We have repeatedly held that nervousness is of limited significance in determining reasonable suspicion and that the government's repetitive reliance on the nervousness . . . must be treated with caution"); see also Gall v. Parker, 231 F.3d 265, 292 (6th Cir. 2000) (testimony that Gall seemed "nice [and] normal" and "not nervous" error because—"we have long been skeptical of such lay testimony"); United States v. Burks, 547 F.2d 968, 970 (6th Cir. 1976) (stating that lay testimony that defendant did not appear "abnormal" by persons "who had very limited opportunity to observe" him had little value), rev'd on other grounds, 437 U.S. 1, 98 S. Ct. 2141 (1978); United States v. Smith, 437 F.2d 538, 540-41 (6th Cir. 1970) (lay testimony as to mental state lacks probative value when a witness' "direct knowledge of the defendant is brief and superficial").[1]

The reasoning underlying the minimal significance accorded to "nervousness" is that courts recognize that "nervousness" has both an innocent and a guilty explanation because people confronted with law enforcement often exhibit signs of nervousness, without having done anything wrong. See, e.g., Chavez-Valenzuela, 268 F.3d at 725 ("Encounters with police are necessarily stressful for law-abiders and criminals alike"); United States v. Fuentes-Cariaga, 209 F.3d 1140, 1142 (9th Cir. 2000) (recognizing that "drivers stopped at the border (or anywhere else) can be nervous for many reasons, one being a natural unease when confronted by an authority figure and another being fear of getting caught with contraband the person knows he is carrying"); accord Wald, 208 F.3d at 907 (it is not uncommon for most citizens, even innocent ones, to

---

[1] In both Gall and Smith, mental state was the defense, and it was deemed error to have lay witnesses, without prior knowledge of the defendant, opine that he appeared "not nervous," Gall, 231 F.3d at 292, or that "he did not appear abnormal," Smith, 437 F.2d at 540. Similarly, here, where a distinct mental state, knowledge, is the determinative issue, permitting witnesses without expertise and with no prior knowledge of Mr. Metzgar to testify to the converse—that is, that he *was* nervous—is equally erroneous.

1 exhibit signs of "innocuous" nervousness when confronted by a law enforcement); <u>Fernandez</u>, 18 F.3d at 879
2 (same).

3     It is well-established that jurors will assign undue weight to a law enforcement officer's testimony that
4 an individual was "nervous" and equate nervous behavior with suspicious behavior. <u>See, e.g.</u>, <u>United States</u>
5 <u>v. Gutierrez</u>, 995 F.2d 169, 172 (9th Cir. 1993) (testimony of law enforcement officers "'often carries an aura
6 of special reliability and trustworthiness,'") (quoting <u>United States v. Espinosa</u>, 827 F.2d 604, 613 (9th Cir.
7 1987)). It is also true that, as is previously recognized, testimony that someone is "nervous" in the presence
8 of law enforcement, is ambiguous. For these reasons, evidence that someone was "nervous" should fall in
9 the same category as evidence that an individual remained silent when confronted with law enforcement
10 accusation. That silence evidence, apart from any constitutional protection, is also inadmissible pursuant to
11 FED. R. OF EVID. 403. <u>United States v. Hale</u>, 422 U.S. 171 (1975). Thus, any slight probative value which
12 could exist is insufficient to justify its admission.

13 **B.  <u>Admission of Nervousness Testimony Violates Rules 701 & 704(b)</u>.**

14     Admission of demeanor evidence should be excluded if it is couched in terms of a law enforcement
15 witness' personal opinion about Mr. Metzgar's behavior, i.e., "he was nervous." An inspector or agent's
16 personal opinion is irrelevant and such opinion testimony based on no prior knowledge of the defendant and
17 upon a very limited observation opportunity, violates Rule 701. Rule 701 provides that a lay witness can only
18 testify to opinions or inferences that are (a) rationally based on the perception of the witness, (b) helpful to
19 a clear understanding of the witness' testimony or to the determination of a fact in issue and (c) not based on
20 scientific, technical, or other specialized knowledge within the scope of Rule 702. <u>See also</u> <u>Gonzalez-Rivera</u>
21 <u>v. INS</u>, 22 F.3d 1441, 1447 (9th Cir. 1994) (holding that an INS agent's testimony at a suppression hearing
22 that an individual was nervous must be disregarded because it was not based upon "reliable, objective
23 evidence").

24 **X.**

25 **THIS COURT SHOULD COMPEL PRODUCTION OF THE GRAND JURY TRANSCRIPTS.**

26     The Court should make the grand jury transcripts available when the defense can show a particularized
27 need. There is a particularized need in this case if a witness who testified before the grand jury will also
28 testify at the trial of Mr. Metzgar. The government must produce a transcript of a witness' testimony before

1  the grand jury following the direct examination of the witness at trial. 18 U.S.C. § 3500; <u>Dennis v. United
2  States</u>, 384 U.S. 855 (1966); FED. R. CRIM. P. 26.2(f)(3). The defense requests that the government make such
3  transcripts available in advance of trial to facilitate the orderly presentation of evidence and to remove any
4  need for a recess in the proceedings for defense counsel to examine the statement pursuant to Federal Rule
5  of Criminal Procedure 26.2(d).

6  Furthermore, to the extent that any of the grand jury testimony in this case is in any way inconsistent
7  with the testimony adduced at trial, the grand jury testimony constitutes exculpatory impeachment evidence.
8  See <u>Giglio v. United States</u>, 405 U.S. 150 (1972). As discussed above, such evidence would be admissible
9  as an adoptive admission pursuant to Rule 801(d)(2). At a minimum, this court should conduct an *in camera*
10 review of the grand jury testimony and order the transcript produced if it contains any testimony that might
11 be <u>Brady</u> material or otherwise subject to production as explained above.

12                                                **XI.**

13                                          **CONCLUSION**

14 For the foregoing reasons, Mr. respectfully requests that this Court grant these motions *in limine*, as
15 well as these other motions for trial.

16                                                                Respectfully submitted,

17                                                                s/ *David M.C. Peterson*
    DATED: April 14, 2008                                         **DAVID M.C. PETERSON**
18                                                                **JASON I. SER**
                                                                  Federal Defenders of San Diego, Inc.
19                                                                Attorneys for Mr. Metzgar
                                                                  david_peterson@fd.org

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing is true and accurate to the best information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

Courtesy Copy to Chambers

Copy to Assistant U.S. Attorney via ECF NEF

Copy to United States Probation Office

Copy to Defendant

Dated:  April 14, 2008              /s/ DAVID M. PETERSON
                                    Federal Defenders of San Diego, Inc.
                                    225 Broadway, Suite 900
                                    San Diego, CA  92101-5030
                                    (619) 234-8467  (tel)
                                    (619) 687-2666  (fax)
                                    David_Peterson@fd.org (email)