**DAVID M.C. PETERSON**
California State Bar Number 254498
**JASON I. SER**
California State Bar Number 201816
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Tel: (619) 234-8467 / Fax: (619) 687-2666
david_peterson@fd.org
jason_ser@fd.org

Attorneys for Mr. Metzgar

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY A. BURNS)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 08CR0372-LAB |
| Plaintiff, | |
| v. | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MR. METZGAR'S *IN LIMINE* MOTIONS |
| GEORGE METZGAR | |
| Defendant. | |

**I.**

**INTRODUCTION**

Mr. George Metzgar is charged by indictment with violating 21 U.S.C. §§ 952 and 960, Importation of Marijuana, and 21 U.S.C. §841(a)(1), possession with intent to distribute. Relevant background facts for his pre-trial motions were set out in a prior pleading and are incorporated by reference herein.

**II.**

**THE COURT SHOULD SUPPRESS THE INFORMATION DERIVED FROM THE SEARCH OF THE CELLULAR TELEPHONE WITHOUT A WARRANT.**

The Fourth Amendment of the United States Constitution protects "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Warrantless searches are per se unreasonable under the Fourth Amendment subject to only a few specifically established and well delineated exceptions. Mincey v. Arizona, 437 U.S. 385, 390 (1978). At this time it is unclear

1 whether agents searched the memory of Mr. Metzgar's cellular telephone ("cell phone") to obtain the
2 telephone number of that cell phone, if not more evidence, including numbers in the phone's memory and
3 the history of incoming and outgoing calls made from the cell phone.  If such a search occurred, the
4 government may seek to admit such evidence at trial, and will almost certainly rely on it in conducting its
5 investigation. The Court should preclude the government from introducing direct evidence or fruits of any
6 search of the cellular telephone because the warrantless search of the telephone's memory violated Mr.
7 Metzgar's Fourth Amendment rights.

**A.    Mr. Metzgar Has a Reasonable Expectation of Privacy In His Cell Phone.**

9 As a preliminary matter, Mr. Metzgar has a reasonable expectation of privacy in his cell phone.  As
10 one District Court in this Circuit recently noted, "[M]odern cell phones record incoming and outgoing calls
11 and can also contain address books, calendars, pictures.  Individuals can store highly personal information
12 on their cell phones and can record their most private thoughts . . . ." United States v. Park, 2007 WL
13 1521573 at 8 (N.D.Cal. 2007) (unpublished). This accords with the Supreme Court's longstanding view that
14 an expectation of privacy be one "that society is prepared to recognize as 'reasonable.'" Katz v. United States,
15 389 U.S. 347, 360 (1967) (Justice Harlan, concurring).  As cellular telephones become more and more
16 capable of storing large quantities of data, individual's subjective expectation of privacy in the phone
17 becomes greater. Society in turn regards that as reasonable. Recent years have given rise to recognition by
18 courts and Congress that data stored on cell phones and other personal electronic devices should not be
19 accessed by the government without a warrant. See, e.g., United States v. Reyes, 922 F.Supp. 818 (S.D.N.Y.
20 1996) (Eletronic Communications Privacy Act applies to data stored in a pager); United States v. Stroud, 45
21 F.3d 438 (9th Cir. 1994) (individual has reasonable expectation of privacy in data stored in a pager)
22 (unpublished opinion).

**B.    Mr. Metzgar's Cell Phone Was Searched Without His Consent.**

24 If any search occurred, it was without a warrant and without Mr. Metzgar's voluntary consent. The
25 government has the burden of proving by clear and positive evidence that an unequivocal and specific
26 consent was given, uncontaminated by any duress or coercion. See Channel v. United States, 285 F.2d 217,
27 219, 220 (9th Cir. 1960); Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973); Bumper v. North Carolina,
28 391 U.S. 543, 548 (1968). Because any search was without a warrant, and without Mr. Metzgar's voluntary

consent, and because no other exception to the warrant requirement applies, Mr. Metzgar demands that any evidence seized as a result of this search be suppressed.

### C.     The Government's Search of the Cell Phone Was Not Part of an Inventory Search.

Any search of the memory of the telephone also cannot be considered part of an inventory search. Warrantless inventory searches of impounded automobiles can qualify as an exception to the warrant requirement and may be conducted in order to: (1) protect the owner's property while the vehicle is in police custody; (2) protect the police against claims of lost or stolen property; or, (3) protect the police from potential danger. See Colorado v. Bertine, 479 U.S. 367, 372 (1987); Illinois v. Lafayette, 462 U.S. 640, 646 (1983); South Dakota v. Opperman, 428 U.S. 364, 369 (1976). For an inventory search to be lawful, the search must be conducted pursuant to standardized procedures. See Florida v. Wells, 495 U.S. 1, 4 (1990); United States v. Griffiths, 47 F.3d 74, 78 (2d Cir.1995). An inventory search policy must not allow so much latitude that the inventory search becomes an "excuse for general rummaging." Wells, 495 U.S. at 3. The government bears the burden of demonstrating conformity with particular standardized procedures to justify the integrity of the inventory search. See United States v. Johnson, 936 F.2d 1082, 1084 (9th Cir. 1991) ("The government bears the burden of justifying a warrantless search").

Courts have "consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents." Opperman, 428 U.S. at 373. An inventory search of an automobile conducted without a warrant, however, is not without limits. An inventory search cannot "be a ruse for a general rummaging in order to discover incriminating evidence." Wells, 495 U.S. at 3. Where an inventory search is merely a pretext for "general rummaging," suppression of evidence is the appropriate remedy.[1] Id.; see also United States v. Bowhay, 992 F.2d 229 (9th Cir. 1993) ("an inventory search is invalid if it was a pretext for an investigative search"); United States v. Thompson, 29 F.3d 62, 65 (2d Cir. 1994) ("The fruit of inventory searches . . . will be

---

[1] On this basis, the Ninth Circuit has ruled that no exceptions to the warrant requirement of the Fourth Amendment justify a warrantless search of personal baggage found during the search, but examined subsequent to completion of an inventory search in the absence of probable cause that it contained contraband. See United States v. Monclavo-Cruz, 662 F.2d 1285, 1288-89 (9th Cir. 1981) (citing Preston v. United States, 376 U.S. 364, 367 (holding that warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the "search is remote in time or place from the arrest")).

1  suppressed when the searching agents act in bad faith or solely for the purpose of investigation"). 2  Accordingly, once the purposes of an inventory search have been met, a subsequent, purely investigatory 3  search is improper.  The government's search of the memory of the telephone cannot be considered part of 4  an inventory search because the agents "mine[d] the items for information rather than to ascertain whether 5  they contained property to be safeguarded." United States v. Wiseman, 158 F.Supp.2d 1242 (D. Kan. 2001). 6  The motivation and reason for such a search was purely investigatory and requires preclusion at trial.

       **D.**      **The Search of Mr. Metzgar's Cell Phone Violated the Electronic Communications Privacy Act**.

In addition to his Fourth Amendment claims, any evidence derived from the cellular phone must be suppressed as violative of federal wiretapping statutes that include protection from highly intrusive searches. Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Title III) was passed by Congress to achieve three main objectives:  to protect the privacy of wire and oral communications, to protect the integrity of court and administrative proceedings, and to prevent the obstruction of interstate commerce. See 1968 U.S.C.C.A.N. 2177.  It was not until 1986, however, that Congress provided statutory protection to wireless communication by passing the EPCA. Pub.L.99-508, 100 Stat. 1848(1986).  The 1986 amendments brought electronic data and cellular communication within the purview of Title III.  Thus, cellular telephone communications now possess the same privacy protections as standard telephone communications -- cellular communications may not be intercepted without prior judicial approval. See United States v. Kim, 803 F. Supp. 352, 361 (D. Hawaii 1992).  Here, any search by the agents would be in violation of Title III, as amended by the ECPA.

       **E.**      **This Court Must Preclude All Fruits Discovered As a Result of the Unlawful Search of the Telephone's Memory**

This Court should suppress all evidence discovered as a result of an unlawful search and seizure of Mr. Metzgar's cell phone. "It is well established that the Fourth Amendment's exclusionary rule applies to statements and evidence obtained as a product of illegal searches and seizures." United States v. Crawford, 372 F.3d 1048, 1054 (9th Cir. 2004) (citing Wong Sun v. United States, 371 U.S. 471  484-88 (1963)). "Evidence obtained by such illegal action of the police is 'fruit of the poisonous tree,' warranting application of the exclusionary rule if, 'granting establishment of the primary illegality, the evidence to which instant

1 objection is made has been come at by exploitation of that illegality or instead by means sufficiently
2 distinguishable to be purged of the primary taint.'" Id. (citing Brown v. Illinois, 422 U.S. 590, 599 (1975)).
3 Furthermore, any statements made by Mr. Metzgar in response to questions that involved the fruits of the
4 cellular phone search must be suppressed per Wong Sun.

### III.

**Motion In Limine To Preclude *Any* Use of Mr. Metzgar's Statements, Or In the Alternative, To Hold an Evidentiary Hearing Prior To Trial On Voluntariness Grounds.**

Mr. Metzgar moves the court to preclude any use of his statements, or in the alternative to hold an evidentiary hearing prior to his trial on the voluntariness of the statements. The need for such pre-trial determination arises out of the unique situation surrounding the videotaping of Mr. Metzgar's statement to Officers Steele and Conrad. Mr. Metzgar spoke with them for over thirty minutes. That interrogation was recorded, but there is no sound on the videotape. Thus, at this time, it is unknown what "statements" of Mr. Metzgar the Government possesses. It is also unknown what the circumstances were surrounding the interrogation. Because the nature of the statements and their voluntariness is currently unknown, even the possibility of their introduction is highly prejudicial, for three reasons.

First, the government has not indicated that all of Mr. Metzgar's post-arrest statements are contained in the reports disclosed to date, and thus has not sufficiently disclosed his oral statements under Federal Rule of Evidence 16(a)(1)(A). Second, because there is no sound, counsel for Mr. Metzgar is unable to determine what the circumstances of the interrogation were, and whether the statements were voluntary. This prejudices Mr. Metzgar's ability to present evidence to the jury regarding the statements' reliability, in violation of Crane v. Kentucky, 476 U.S. 683, 690 (1986). Counsel is unable to ascertain the circumstances surrounding the statements. Third, failure to hold a hearing on voluntariness prior to trial, given the circumstances, chills Mr. Metzgar's right to testify. The prosecution is reserving the right to introduce unknown and undiscovered statements allegedly made by him in its rebuttal case. Without knowing what these statements are, or the circumstances surrounding them, Mr. Metzgar cannot make an informed decision as to whether he should testify or not.

//
//

1  **A.    The Statements Should Be Precluded Because the Government Has Not Sufficiently Disclosed Substance of the Statements.**

The statements of Mr. Metzgar are discoverable under Federal Rule of Criminal Procedure 16(a)(1)(A). In addition, Mr. Metzgar has specifically requested disclosure of any statement by him that is in the possession, custody or control of the Government, or that the Government knows or through due diligence could know exists.[2] Because he has made this specific request the Government is obligated to provide notice of its intent to use such evidence under Rule 12(b)(4)(B). Mr. Metzgar has to date not received any discovery from the government regarding the substance of his videotaped statement, as the videotape has no sound. Because Mr. Metzgar has not received any statements that Mr. Metzgar made—beyond those included in the Agent's handwritten notes—he requests that any statements not yet produced be precluded from trial.

The plain language of Rule 16(a)(1)(A) requires disclosure of a defendant's oral statement. This includes statements the government intends to introduce at trial—either in its case-in-chief or in rebuttal—if they were made in response to interrogation by a person the defendant knew was a government agent. Agents Steele and Conrad interrogated Mr. Metzgar for roughly 30 minutes, but the government has, to date, produced only a one-half page synopsis of Mr. Metzgar's statements to them. There are statements that remain undisclosed. If the government intends to use them at trial, it must disclose them to defense counsel. It is of no matter that these statements were not memorialized in written form. Rule 16(a)(1)(B) addresses disclosure of written statements and records of a defendant's statement. Rule 16(a)(1)(A), when read in the context of Rule 16(a)(1)(B), requires that the government produce the substance of an unwritten or unrecorded statement by a defendant in response to interrogation. If Rule 16(a)(1)(A) were limited to statements written down—either then or later—it would render Rule 16(a)(1)(B) superfluous. This is made clear by the Advisory Committee Notes to the 1974 Amendments to Rule 16, which added the discovery obligation vis-a-vis oral statements:

> The reasons for permitting the defendant to discover his own [written or recorded] statements seem obviously to apply to the substance of any oral statement which the government intends to use in evidence at trial. Certainly disclosure will facilitate the raising of objections to admissibility prior to trial.

---

[2] See Defendant's Motion to Compel Discovery, at 19.

Fed.R.Crim.P. 16(a)(1)(A), Advisory Committee Note to the 1974 Amendments to Rule 16. In sum, any undisclosed statements should be precluded at trial.

**B.    The Statements Should Be Precluded From Both the Government's Case-in-Chief And Its Rebuttal Case Under <u>Crane v. Kentucky</u>, Because the Circumstances Prevent Mr. Metzgar From Ascertaining Their Voluntariness Prior to Trial.**

Due process includes a criminal defendant's right to "a meaningful opportunity to present a complete defense," <u>Crane</u>, 476 U.S. at 690. As <u>Crane</u> makes clear, this includes the right to present evidence of the circumstances surrounding statements by the defendant *to the jury*. <u>Id.</u> In this case, if Mr. Metzgar is not allowed to inquire into the circumstances surrounding the interrogation before trial, his right to present evidence about the reliability of his statements at trial will be severely prejudiced, and he will not have a "meaningful opportunity to present a complete defense." <u>Id.</u>, citing <u>California v. Trombetta</u>, 467 U.S. 479, 485 (1984). <u>Crane</u> requires that Mr. Metzgar be allowed to challenge the voluntariness of his statements both outside the presence of the jury *and* to the jury itself. In order to present that evidence, Mr. Metzgar has a right to evidence regarding voluntariness before the trial.

When Mr. Metzgar puts on his case, if he chooses to do so, he will have had no opportunity to ascertain the voluntariness of those statements. He will thus be prevented from arguing his statements' voluntariness—and hence reliability—to the jury. This will impinge on his right to "present a complete defense" <u>Id.</u> Counsel for Mr. Metzgar will have had the opportunity to preview the case to the jury during opening statement, but without any knowledge as to what the substantive evidence regarding the voluntariness of the statements will be. Indeed, without a hearing prior to trial or preclusion of the statements, Mr. Metzgar will have to put on an entire case—should he choose to do so—without any evidence of the circumstances surrounding the taking of the statements. Mr. Metzgar must be allowed to present a complete defense and make the necessary strategic decisions in advance of trial. The substantive evidence regarding the voluntariness and nature of the alleged statements must be made available to Mr. Metzgar prior to trial so that he can prepare a defense.

//
//
//
//

1    While Mr. Metzgar is arguably in the best position to recall his own statements, by the same logic
2 Agents' Steele and Conrad are in the best position to recall their statements, which are highly relevant to the
3 voluntariness of Mr. Metzgar's statements in response to their interrogation.[3]  Thus, a hearing before trial is
4 merited, unless the court is inclined to preclude Mr. Metzgar's statements in response to interrogation not
5 only from the government's case-in-chief, but also from its rebuttal case.

**C.   The Statements Should Be Precluded Because the Threat of Their Introduction—Without Knowing Their Substance—Chills Mr. Metzgar's Right To Testify Under the Fifth And Sixth Amendments.**

8    The unique circumstances here—that the interrogation does not have sound—merit a hearing before
9 trial so that Mr. Metzgar can inquire into the circumstances surrounding statements the government will
10 introduce if he chooses to exercise his right to testify.  Mr. Metzgar's decision to testify will be based upon
11 both the nature of the statements the government intends to use against him in its rebuttal case *and* the
12 circumstances surrounding the making of those statements.  If he is not provided the opportunity to find out
13 whether the statements were voluntarily made before his trial, his right to testify will be chilled.  The
14 unknown statements made under unknown circumstances in response to unknown questions will remain a
15 threat to him should he choose to exercise his right to testify.  This chilling of the right to testify will in turn
16 affect defense counsel's strategy, trial defense, and opening statement, all without having any opportunity
17 to receive discoverable evidence from the government.

18    This case is in a similar posture to New Jersey v. Portash, 440 U.S. 450 (1979).  In Portash, the
19 government indicated its intent to use prior immunized testimony of the defendant against him if he chose
20 to testify at trial.  Because of this, the defendant exercised his right not to testify.  The Court held that
21 because there was a claim that the prior statements were involuntary (because of the grant of immunity), the
22 New Jersey trial court erred in denying the defendant's motion in limine to preclude the statements.  Id. at
23 459. What is relevant from Portash is that it was the threat of the government using the defendant's prior
24 involuntary statements to impeach that prevented the defendant from testifying.  Here, where there is a claim

---

[3] It is noted that Mr. Metzgar has already submitted a declaration stating that prior to interrogation he was handcuffed to a bench for an unknown amount of time, was asked questions about the offense before being read his Miranda rights, and felt pressured to speak with agents.  See Declaration of George Metzgar, Exhibit A to Court Docket #10.

that the statements by Mr. Metzgar are involuntary, that claim must be decided before trial. Otherwise the possible introduction of involuntary statements will chill his right to testify, without him having any opportunity to contest their voluntariness. It flows from <u>Portash</u> that a claim as to voluntariness of statements must be resolved prior to a defendant's decision as to whether to testify, so that the threat of the introduction of possibly involuntary statements does not chill the person's right to testify under the Fifth and Sixth Amendments.

## IV.

## **CONCLUSION**

For the foregoing reasons, Mr. Metzgar respectfully requests that this Court grant these motions *in limine*.

Respectfully submitted,

DATED: April 25, 2008

s/ *David M.C. Peterson*
**DAVID M.C. PETERSON**
**JASON I. SER**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Metzgar
david_peterson@fd.org

1  **CERTIFICATE OF SERVICE**

2  Counsel for Defendant certifies that the foregoing is true and accurate to the best information and

3  belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

4  Courtesy Copy to Chambers

5  Copy to Assistant U.S. Attorney via ECF NEF
   Copy to Defendant

6
   Dated:  April 25, 2008                     /s/ DAVID M. PETERSON
7                                            Federal Defenders of San Diego, Inc.
                                             225 Broadway, Suite 900
8                                            San Diego, CA  92101-5030
                                             (619) 234-8467  (tel)
9                                            (619) 687-2666  (fax)
                                             David_Peterson@fd.org (email)