KAREN P. HEWITT
United States Attorney
CARLOS ARGUELLO
Assistant U.S. Attorney
California State Bar No. 157162
NICOLE A. JONES
Assistant U.S. Attorney
California State Bar No. 231929
United States Federal Building
880 Front Street, Room 6293
San Diego, California  92101
Telephone: (619) 557-6252
Facsimile: (619) 235-2757

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08cr0372LAB |
|---|---|---|
| Plaintiff, | ) ) | DATE:  May 5, 2008 |
| | ) | TIME:  2:00 p.m. |
| v. | ) ) | GOVERNMENT'S MOTIONS |
| | ) | IN LIMINE TO: |
| GEORGE METZGAR, | ) ) | 1) ADMIT EXPERT TESTIMONY; |
| Defendant. | ) | 2) LIMIT CHARACTER EVIDENCE; |
| | ) | 3) ADMIT DEMEANOR EVIDENCE; |
| | ) | 4) EXCLUDE IRRELEVANT EVIDENCE; |
| | ) | 5) EXCLUDE HEARSAY TESTIMONY; |
| | ) | 6) COMPEL DISCOVERY. |
| | ) | |
| | ) | TOGETHER WITH STATEMENT OF |
| | ) | FACTS AND MEMORANDUM OF |
| | ) | POINTS AND AUTHORITIES |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Carlos Arguello and Nicole A. Jones, Assistant United States Attorneys, and hereby files its motions in limine in the above-captioned case.  The motions are based upon the files and records of this case, together with the attached statement of facts and memorandum of points and authorities.

1

**I.**

2

**STATEMENT OF FACTS**

3

**A.    PRIMARY INSPECTION**

4      On Sunday, February 3, 2008, at approximately 10:40 p.m.,

5  Defendant George Metzgar ("Defendant") drove a 1974 Dodge Tioga motor

6  home, with Nevada license plates, to the Calexico, California, East

7  Port of Entry.  He was the vehicle's sole occupant and registered

8  owner.  Defendant was one of a handful of motorists awaiting

9  inspection prior to the port closing for the evening.

10      United States Customs and Border Protection Officer Richard

11  Molina was working at primary booth number one at the port when

12  Defendant's vehicle approached.  The Officer asked Defendant routine

13  border inspection questions.

14      Defendant declared to be a United States citizen and provided his

15  California identification card (which showed his birth date as August

16  22, 1946).  Defendant claimed he was not bringing anything back from

17  Mexico.  Defendant also told the Officer that he was on his way to

18  visit family in Indio.  With some hesitation, he further explained he

19  had been vacationing in San Felipe the past three days as he recently

20  had retired.  Finally, Defendant stated he lived in Phoenix, Arizona.

21      During this brief interaction with Defendant, Officer Molina

22  noticed Defendant's demeanor: he seemed noticeably anxious to provide

23  his vehicle registration to the Officer; he interrupted the Officer's

24  inspection; he avoided eye contact; and he seemed nervous as his hands

25  shook when he presented his registration document.

26      As a result, the Officer referred Defendant and his motor home

27  to the secondary area for further inspection.

28

**B.    SECONDARY INSPECTION**

In the secondary inspection area, United States Customs and Border Protection Officer Eduardo Bosquet assumed inspection of the 1974 Dodge Tioga motor home.  The Officer initiated his inspection by speaking with Defendant.   In response to questioning, Defendant claimed he had owned the vehicle for one week (although registration documents in the motor home were issued to Defendant in August 2007), and that he had just been to San Felipe, Mexico.  Defendant stated he had been in San Felipe for the past three days.  He further told the Officer he had just retired and he had gone to Mexico just because he felt like it.

The Officer then inspected the motor home.  Officer Bosquet learned from Canine Enforcement Officer Ragsdale that a narcotics detector dog had alerted to the rear of the motor home.  It should be noted that Defendant told Officer Ragsdale that he was driving to Fresno.  Officer Bosquet conducted a "seven-point" inspection of the vehicle and  ultimately found a total of nineteen (19) packages of what proved to be marijuana, hidden in a non-factory plywood compartment underneath the rear-bench seating cushions.  The compartment appeared to be recently constructed as it appeared to have new plywood, screws, and contact paper.  The gross weight of the marijuana was 104.54 kilograms or 229.98 pounds.  The net weight is 97.10 kilograms.

Officers subsequently placed Defendant under arrest for the illegal importation of narcotics.

During a search of Defendant's person incident to arrest, agents found a total of $40.00 cash.

C.    **DEFENDANT'S STATEMENTS**

United States Immigration and Customs Enforcement Special Agent William Steele assumed the investigation of this case. At approximately 1:20 a.m., Agent Steele advised Defendant of his Miranda rights in the English language with fellow Special Agent Jerry Conrad acting as a witness. Defendant stated he understood his rights and agreed to speak with the agents.

Defendant denied knowledge of the marijuana found in his motor home. He claimed he drove to Mexico since he had not been there in some time. Once in Mexicali on Friday, he noticed his radiator over heated so he stopped at a repair shop in that city. Defendant was unable to provide agents any information related to the repair shop such as its name, location, or anything else that might be relevant.

Defendant stated that persons at the repair shop gave him a ride to the Azteca hotel in Mexicali where Defendant stayed from Friday until Sunday, the day the shop completed the repairs and the day of his arrest. Defendant told the agents that persons at the radiator repair shop must have placed the drugs in his motor home.

Agent Steele questioned the veracity of Defendant's story and told Defendant that drug smugglers simply are not known to give marijuana-loaded vehicles to unknowing drivers. Defendant then added to his story by telling agents that persons at the radiator shop had tried to hire him as a load driver but, when he declined, they then offered to buy the motor home from him. Defendant then invoked his right to counsel.

///

///

## II.

### POINTS AND AUTHORITIES

**A.    EXPERT TESTIMONY**

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed.R.Evid. 702. The trial court has broad discretion to admit expert testimony. See, e.g., United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995). An expert may base his/her opinion on hearsay or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed.R.Evid. 703. In addition, an expert may provide opinion testimony even if it embraces an ultimate issue to be decided by the trier-of-fact. Fed.R.Evid. 704.

### 1.    Identity of Substance as Marijuana

Unless the parties enter into a stipulation involving the marijuana seized in this case, the Government intends on calling a DEA forensic chemist, to testify as to the identity of the substance seized from the vehicles in this case. The Government expects him to testify that laboratory examinations confirmed that the contraband was marijuana, a Schedule I Controlled Substance. This testimony bears directly on an element of the charged offense: that marijuana is a prohibited drug.

This testimony is permitted under Rule 702 of the Federal Rules of Evidence, which allows witnesses qualified as experts to testify as to scientific or technical knowledge that "will assist the trier of fact to understand the evidence." See United States v. Cruz, 127

1   F.3d 791, 801 (9th Cir. 1997) (DEA forensic chemist properly

2   established as expert to identify nature of controlled substance);

3   United States v. Burden, 497 F.2d 385, 387 (8th Cir. 1974) (forensic

4   DEA chemist, whose educational background and experience were

5   established, was properly allowed to testify as an expert on the

6   various tests performed on a substance to confirm that it was

7   marijuana).

8                    **2.   Value of the Drugs**

9        The Government intends to present expert testimony about the

10  quantity, wholesale value, and street value of the marijuana seized

11  in this case.   The quantity and value of the marijuana

12  circumstantially demonstrate that the Defendant knew that the car in

13  which he rode into the United States contained marijuana, and that the

14  Defendant constructively possessed the marijuana with the intent to

15  distribute it.   Knowledge and intent are elements of the offenses

16  charged in this case.

17       The Ninth Circuit permits the use of such expert testimony.   In

18  United States v. Ogbuehi, 18 F.3d 807, 812 (9th Cir. 1994), for

19  instance, the Defendant was charged with the importation of heroin

20  after he and others attempted to smuggle approximately 2.5 pounds of

21  heroin across the border.   At trial, the Government introduced the

22  expert testimony of a DEA agent as to the street value of the heroin,

23  assuming it had been cut repeatedly and sold on the street.   The Ninth

24  Circuit held that agents can testify to the street value of narcotics

25  and that counsel can argue reasonable inferences from such testimony.

26  See also United States v. Savinovich, 845 F.2d 834, 838 (9th Cir.

27  1988) (price, quantity, and quality of narcotics is relevant to

28  defendant's intent to distribute).

                              6

### 3.   Personal Use Versus Distributable Amount

Finally, the Government intends to elicit expert testimony from an Immigration and Customs Enforcement Special Agent to establish that the quantity of marijuana found in the vehicle driven by Defendant is a distributable, rather than a personal use amount. See United States v. Tavakkoly, 238 F.3d 1062, 1067 (9th Cir. 2001) (undisputed expert testimony that 1.35 kg of opium was inconsistent with possession for personal use was relevant to prove defendant's intent to distribute); United States v. Alatorre, 222 F.3d 1098, 1104-05 (9th Cir. 2000) (expert testimony properly admitted to establish that quantity of marijuana was distributable amount, rather than just personal use amount).

### B.   CHARACTER EVIDENCE

The Government anticipates that the defense will call character witnesses to testify on behalf of the Defendant.  The Court should limit any such evidence to opinion or reputation testimony about the defendant's general character for lawfulness.  See Fed.R.Evid. 404(a)(1), 405(a), and 803(21); United States v. Diaz, 961 F.2d 1417, 1419-20 (9th Cir. 1992)(district court properly excluded testimony about defendant's "character trait for [not] being prone to large-scale drug dealing").

In introducing positive character evidence, Defendant must restrict himself to evidence regarding "law abidingness" and honesty. Defendant may not introduce evidence concerning specific instances of good conduct, lack of a prior record, or propensity to engage in specific good acts. United States v. Hedgecorth, 873 F.2d 1307, 1313 (9th Cir. 1987) ("[W]hile a defendant may show a characteristic for lawfulness through opinion or reputation testimony, evidence of

specific acts is generally inadmissible.") (citations omitted); <u>United States v. Barry</u>, 814 F.2d 1400, 1403 (9th Cir. 1987); <u>Gov't of Virgin Islands v. Grant</u>, 775 F.2d 508, 512 (3d Cir. 1985) ("[T]estimony that one has never been arrested is especially weak character evidence.").

### C.   <u>DEMEANOR EVIDENCE SHOULD BE ADMITTED</u>

Evidence regarding a defendant's demeanor and physical appearance is admissible as circumstantial evidence that is helpful to the jury's determination as to whether a defendant knew drugs were concealed in the vehicle.  Fed.R.Evid. 701; <u>United States v. Hursh</u>, 217 F.3d 761 (9th Cir. 2000) (holding that a jury may consider a defendant's nervousness during questioning at Calexico port of entry); <u>United States v. Fuentes-Cariaga</u>, 209 F.3d 1140, 1144 (9th Cir. 2000) (holding that it is within the ordinary province of jurors to draw inferences from an undisputed fact such as a defendant's nervousness at Calexico port of entry); <u>United States v. Barbosa</u>, 906 F.2d 1366, 1368 (9th Cir. 1990) (holding that a jury could infer guilty knowledge from a defendant's apparent nervousness and anxiety during airport inspection); <u>Unites States v. Lui</u>, 941 F.2d 844, 848 n.2 (9th Cir. 1991) (holding that a jury could consider guilty knowledge from a defendant's acting disinterested during airport inspection).

Here, witnesses for the United States may properly testify to Defendant's demeanor and physical appearance, as they have personal knowledge based upon their observations of Defendant.

### D.   THE COURT SHOULD PROHIBIT REFERENCE TO DEFENDANT'S FINANCES, EDUCATION, AND POTENTIAL PUNISHMENT

Evidence of, and thus argument referring to, a defendant's finances, education, and potential punishment is inadmissible and improper.

1    Federal Rule of Evidence 402 provides that "[e]vidence which is
2    not relevant is not admissible."  Moreover, Rule 403 provides further
3    that even relevant evidence may be inadmissible "if its probative
4    value is substantially outweighed by the danger of unfair prejudice."
5    The Ninth Circuit Model Jury Instructions explicitly instruct jurors
6    to "not be influenced by any personal likes or dislikes, opinions,
7    prejudices, or sympathy." § 3.1 (2000 Edition).  Reference to either
8    Defendant's finances, education, and potential punishment may be
9    relevant at sentencing.  However, at trial, such references are not
10   only irrelevant and unfairly prejudicial, but a blatant play for
11   sympathy and jury nullification as well.

12   **E.    PROHIBIT SELF-SERVING HEARSAY**

13   The Defendant must be precluded from introducing his own
14   statements through the testimony of another witness, the opening
15   statement or argument of counsel, or any questions posed during
16   examination of witnesses by counsel.  Any such attempt would be
17   impermissible because those statements are hearsay.  While the
18   Government may use the statements of a defendant against her under
19   Federal Rule of Evidence 801(d)(2) (admission by party-opponent), this
20   Rule may not be relied upon by Defendant because he is not the
21   proponent of the evidence and the evidence is not being offered
22   against her (but rather on her behalf).  Defendant cannot attempt to
23   have "self-serving hearsay" brought before the jury without the
24   benefit of cross-examination by the United States.  See e.g., United
25   States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1987).

26   Nor can Defendant rely on Federal Rule of Evidence 801(d)(1)(B),
27   which provides that a statement is not hearsay if:

28   The declarant testifies at trial or hearing and is subject to
     cross-examination concerning the statement, and the statement

9                                          08cr0372LAB

1
2
3

> is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . .

4
5
6

Fed. R. Evid. 801(d)(1)(B).  A prior consistent statement is not

admissible if it is introduced in the absence of impeachment.

See United States v. Navarro-Varelas, 541 F.2d 1331, 1334 (9th Cir.

7
8
9

1976) (appellant offered to introduce and play tape recording of

interview of appellant and DEA agent to reinforce appellant's

credibility).  Moreover, even if the declarant's testimony has been

10
11

impeached, prior consistent statements are not admissible if the

declarant had motive to give false information at the time that the

12
13

prior out-of-court statement was made.  See United States v. DeCoito,

764 F.2d 690, 694 (9th Cir. 1985) (declarant's prior consistent

14
15

statement not admissible for purposes of rehabilitation if declarant

had motive to lie to avoid prosecution when prior statement was made);

16
17

United States v. Rohrer, 708 F.2d 429, 433 (9th Cir. 1983) (diagram

drawn by declarant not admissible as prior consistent statement

18
19

because declarant had motive when diagram was made to fabricate, that

is, driving better leniency bargain with the government).

20
21

    Finally, Defendant cannot rely on Rule 803(3), which provides

that the hearsay rule does not exclude then existing mental,

22

emotional, or physical condition.  See Fed.R.Evid. 803(3)

23
24

    Defendant cannot introduce his own statements through the

testimony of another witness or by improper reference during opening

25

statements.  Defendant is free to provide a statement from the witness

26

stand where he would properly be subject to cross-examination.

27

///

28

///

08cr0372LAB

**F.    <u>UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY</u>**

As of the date of the preparation of these motions, Defendant has produced no reciprocal discovery.  The United States requests that Defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of <u>all</u> witnesses, except for those of Defendant.  Defendant has not provided the United States with any documents or statements. Accordingly, the United States will object at trial and ask this Court to suppress any evidence at trial which has not been provided to the United States.

**III.**

**<u>CONCLUSION</u>**

For the foregoing reasons, the Government respectfully requests that the Court grant its motions <u>in</u> <u>limine</u>.

DATED: April 28, 2008

                                        Respectfully submitted,

                                        KAREN P. HEWITT
                                        United States Attorney

                                            s/Carlos Arguello

                                        CARLOS ARGUELLO
                                        Assistant U.S. Attorney

                                            s/Nicole A. Jones

                                        NICOLE A. JONES
                                        Assistant U.S. Attorney

08cr0372LAB